Phillips v. Phillips.

## CLARISSA B. PHILLIPS

### v.

### ALONZO PHILLIPS.

1. ADULTERY—CONDONATION.—In a suit for divorce on the ground of adultery, condonation of the adulterous act will not be inferred from the fact of subsequent cohabitation, where it appears that the wife at the time of such cohabitation had no knowledge that her husband had committed adultery. To establish a condonation, knowledge of the crime must be clearly and distinctly proved.

2. CONDONATION OF ACTS OF CRUELTY.—The offenses of adultery and extreme cruelty are essentially different in their nature, and the same circumstances, as respects condonation, cannot be equally applicable to both; and cohabitation, after acts of extreme and repeated cruelty, is not a bar to a divorce for that cause.

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Mr. Egbert Jamieson, for appellant; upon the point that cohabitation was not a condonation of acts of cruelty, cited D'Aguilar v. D'Aguilar, 1 Hag. Ec. 773; Reese v. Reese, 23 Ala. 785; Davis v. Davis, 19 Ill. 334; Wood v. Wood, 2 Paige, 108; Angle v. Angle, 1 Robertson, 634; Perkins v. Perkins, 6 Mass. 69; Hollister v. Hollister, 9 Barr, 449.

That there can be no condonation of adultery without knowledge of the offense: 2 Bishop on Marriage and Div. § 70; Davis v. Davis, 19 Ill. 334; Greenhill v. Ford, 1 Shaw's Appl. Cas. 435; 1 Frasher's Dom. Rel. 668; 2 Greenl. Ev. § 54; Ellis v. Ellis, 4 Swab. & T. 154; Hoffmin v. Hoffmin, 7 Paige, 60; D'Aguilar v. D'Aguilar, 1 Hag. Ec. 773; Dempster v. Dempster, 2 Swab. & T. 438.

Mr. J. R. Custer, for appellee.

Murphy, P. J.   This was a bill in chancery filed in the Circuit Court of Cook county, to the May term, 1877, by appellant, Clarissa B. Phillips, against her husband, Alonzo Phillips, for divorce.

By the bill the defendant is charged with the two offenses of adultery and extreme and repeated cruelty, either of which, under the statutes of this State, is a ground for a divorce. The allegations of the bill are that for the period of five or six years preceding their final separation, the defendant gave himself up to adulterous and licentious practices, and committed the crime of adultery with various persons at divers times and places, in some instances giving the names of the parties with whom he committed such adultery, and charged that in other instances he committed such offenses with persons to the complainant unknown.   That during all the time aforesaid the defendant was guilty of extreme and repeated cruelty to her, by violently beating, bruising, pounding and maltreating her in various ways in said bill specified.   To this bill the defendant answered, denying generally and specifically each and every allegation thereof ? to which a replication was filed, and proof taken; and upon the hearing, the court below dismissed the bill, and decreed for the defendant, from which decree the

Phillips v. Phillips.

complainant prayed an appeal to this court, and brings the record here, and asks a reversal upon the ground that the court erred, first, in dismissing appellant's bill for want of equity; secondly, the court erred in not finding a decree in favor of appellant, and against appellee. It is insisted by appellee, first, that the proof does not sustain the charges in said bill; and second, that if they do, the offenses charged have been condoned, and we infer that to be the view taken by the court below; that notwithstanding the offenses charged had been established by the proof, still they have been condoned by the act of the complainant, and for that reason dismissed her bill.

This presents the question—and we think it the only question in the record—of whether the complainant has done any act which justifies the inference in law of condonation of these offenses thus established. Upon that question the following stipulation, filed in this Court, and signed by the counsel respectively, is material:

"It is hereby stipulated and agreed, first, that the bill of complaint charges appellee with having committed the offenses of adultery and cruelty, and that the court below found in its decree that said charges were fully and completely established by the proofs; second, that the court below also found that said offenses so proven had been condoned by appellant, and that such finding was based upon the fact that appellant and appellee had cohabited together at a hotel in Chicago; that such single act of cohabitation, the court below held, constituted a condonation of said offenses so proven, and thereupon dismissed the bill for want of equity."

"Third, there is no proof showing that appellant knew of the appellee's adulterous practices at the time she cohabited with him at the hotel aforesaid; further, that the sole and only question presented to this Honorable Court by the record in the case is, where complainant files her bill for divorce on the ground of adultery and cruelty, and by proper and competent proof establishes such charges, will a single act of cohabitation, occurring a few days prior to separation, work a condonement of such offenses?" This opens for discussion the question of

condonation as an inference of law from overt acts of the complainant. It is claimed that if the act of cohabitation, after his guilt, shall so be held as an inference or presumption of law to have condoned his offenses, this may or may not be so, depending upon a certain other question connected with it, as a principle vital to the ends of justice and fairness between parties, which is the question of whether at the time she did these acts from which a condonation is claimed, she was in possession of a knowledge of his guilty conduct, for on principle it would seem inevitable that she could not be held to have condoned or forgiven an offense which, at the time, she was ignorant of his having committed.

By the stipulation, clause third, we infer that at the time of the alleged cohabitation she was ignorant of his adulterous practices, and that so far as that particular charge against him is concerned, she could not be held to have condoned it, for the obvious reason she was ignorant of his guilt. As to the allegation of extreme and repeated cruelty, it is otherwise. She of course knew to her sorrow of the existence of those wrongs which had been so frequently inflicted upon her, as is shown by the record. It will be seen by the stipulation, a knowledge of his adulterous conduct must have come to her knowledge after the act of cohabitation alleged. The precise time does not appear, either from the record or stipulation, but it is wholly unimportant when, if since the act of cohabitation which, it is claimed, amounts in law to condonation of such offenses. In order to establish condonation by her, knowledge of the crime must be clearly brought home to her by distinct proof: 2nd Vol. Greenleaf's Evidence, sections 53 and 54. The principle is elementary and stands to reason; that without a full knowledge on her part at the time of the alleged condonation of all the facts and circumstances connected with his guilty conduct, no inference of condonation can be drawn from any act of hers. In the case of Davis v. Davis, 19 Ill. 334, this doctrine is re-stated, and re-affirmed in the case of Farnham v. Farnham, 73 Ill. 500.

Thus it will be seen that the charge of adultery is sustained, and the defense thereto of condonation has failed for the reasons

above stated, and upon that issue alone the complainant was entitled to a decree for a divorce. Leaving out of sight for the time being the charge of adultery, it only remains to be considered whether the act of cohabitation at the hotel in Chicago, as above stated, was such an act as in law warrants the inference or presumption of condonation of his offenses by way of extreme and repeated cruelty. The two offenses of adultery and extreme and repeated cruelty are essentially different in their nature, and the same considerations cannot be equally applicable to both.

As respects condonation of cruelty, in the case of Gardner v. Gardner, 2 Gray, 434, the court held that the cohabitation for a single night immediately succeeding a series of acts of cruelty by the husband towards his wife, is not such a condonation as will bar a bill by the wife for a divorce from bed and board for extreme cruelty, if the husband, by the violence of his subsequent conduct causes a reasonable apprehension in her mind that she can no longer cohabit with him without imminent danger of suffering extreme cruelty from his assaults, then such subsequent violent conduct revives the right of the wife to proceed for the original cause of divorce, and effectually bars the defense of condonation. In the case of Perkins v. Perkins, 6 Mass. 68, which was a bill for divorce *a mensa et thoro*, for the extreme cruelty of the respondent, the evidence showed for a long course of time the respondent had made use of brutal language, and violent threats of personal abuse; and that about six years since he unjustifiably assaulted and beat her, after which fact the parties continued to reside together, the respondent still continuing to use the same abusive and threatening language. It was suggested by the respondent that although the evidence of personal violence used by him might have furnished sufficient cause for divorce if seasonably presented, yet the libellant, by her evidence of cohabitation with him, had remitted her claim to a divorce, and had pardoned the outrage.

· The courts say, in case of an application for a divorce *a vinculo* for adultery, when after a knowledge of the offense committed the libellant has lived with the offending party, we

have always refused to grant the divorce; but this rule cannot be applied to a case of the kind now before us. The patience and forbearance of the wife, and her endeavor to prevent the scandal of an open rupture, ought not to operate to her prejudice

In Hollister v. Hollister, 9 Barr, the court in discussing this question, say that "cohabitation after abuse is not a bar to a divorce for that cause; the distinction between the two cases—adultery and cruelty—seems to be founded upon a just conception of the conjugal relation. With regard to the personal indignities and barbarous treatment, nothing but the devoted fondness of a female submissive in distress, could induce her to remain after the infliction of personal indignities, with the hope of softening her husband's heart. It is the duty of a wife to forbear long, and to endeavor to reclaim her husband. If she fail—her kindness, her tears and her sorrows are all of no effect — shall the very virtue of her patience and fidelity deprive her of her only remedy which the law holds out to a broken peace and ruined hope?" The relation to the domestic circle of the wife and husband are essentially different. She has less opportunity to look after and guard his honor than he has of hers. Upon reason, therefore, founded in the conjugal relation, the difference in the duties respectively required to the domestic establishment, a less stringent rule is held against her than against him, so far as inferences of condonation are concerned from the overt acts of the parties respectively. In this case the record shows that the defendant for years, and in instances too numerous to mention, continued a system of extreme and repeated cruelty and torture to the complainant, which are so horrible to contemplate that it seems to us a wonder that the court below should have felt it its duty to deny her the relief she asked. The testimony in the case portrays him in a character so loathsome and despicable, so utterly wanting in redeeming characteristics as a husband and father, that it is difficult to find fitting terms to character-ize him. That she should have borne so long such cruelties and indignities, is to us a wonder, and from the peculiar de-pendence of the wife upon the husband, arising out of their peculiar relation to each other and the domestic circle, we

are inclined to the conclusion that by the simple act of cohabitation immediately prior to the filing of her bill, an inference of condonation of these brutish cruelties is unwarrantable. So in the light of these views, we think the court below erred in finding and decreeing that the complainant had by the one act of cohabitation immediately prior to the filing of this bill, and in ignorance of his adulterous conduct, condoned said offense, and for this error the decree of the court below is reversed, and the cause remanded, with directions to that court to enter a decree of divorce for the appellant, pursuant to the prayer of her bill.

Decree reversed and cause remanded.