[No. 31734. Department One. November 29, 1951.]

MARJORIE KOLSTAD RENTEL, *Respondent and Cross-appellant,* v. JOSEPH JOHN RENTEL, *Appellant.*[1]

*Erik Froberg,* for appellant.

*Lycette, Diamond & Sylvester,* for respondent and cross-appellant.

[1]Reported in 238 P. (2d) 389.

GRADY, J.—This action was originally instituted by respondent in May, 1949, to obtain a divorce from appellant, custody of the two minor children, and a division of property. Later, the action was dismissed, the parties making an effort to become reconciled and resume their marital status. They made a trip to California. Respondent became aggrieved over the conduct of appellant towards her. The present action was commenced December 6, 1949.

The appellant and respondent were married in June, 1939. At that time he was of the age of forty years and she was twenty-three. He followed the business of general contractor, principally constructing the better class of dwelling houses. Her employment had been that of clerk, stenographer, and telephone operator. Two male children were born to the marriage, one in August, 1945, and the other in February, 1948.

The complaint alleged the carrying on of a course of conduct by appellant which, if proven to a substantial extent, would entitle her to a divorce. Appellant answered the complaint, denying the charges made against him. As an affirmative defense, he alleged that he and respondent had become reconciled, and the acts of which she complained had been condoned. Upon application of appellant, the case was transferred to the family court. The parties were unable to adjust their differences, and that proceeding was dismissed.

The court found that many of the charges of cruelty set forth in the complaint had been proven. It would serve no useful purpose to discuss the evidence relating to the conduct of appellant towards respondent. We have examined the record in the light of appellant's objections to the findings of fact and have reached the conclusion that the findings are supported by a preponderance of the evidence.

The appellant contends that, when respondent accepted his offer of reconciliation, followed by their resumption of married life, she forgave his past conduct and cannot thereon base a cause of action for divorce. After a period of separation, appellant and respondent decided to make an effort to become reconciled to each other, again undertake the joint rearing of their children, and re-establish a home

life. They made a trip to California with the thought in mind that having a vacation and the enjoyment of those pleasures usually incident to such an event would be conducive of a realization of their hopes. At the earliest opportunity, however, appellant made sexual approach to respondent in a coarse and crude manner. He was neither gentle nor genteel. The respondent was willing to resume a normal marital relationship, but, as she explained to the court, she expected appellant to be gentle and to show an affectionate regard for her in such a personal matter. The parties returned to Seattle, and shortly thereafter this action was commenced.

The record clearly indicates that respondent did not forgive appellant for his past conduct when they decided to renew their home life. She may have done so had appellant carried out the promises he made to her. Her resumption of their former relationship was impliedly conditioned upon proper and considerate treatment.

■ The rule applicable to the facts of this case is that, if a wife against whom acts of cruelty have been committed by her husband resumes or continues marital life with him, it is upon the implied condition that his misconduct will not be again repeated, and where the condition is broken there is a revival of the former offenses. *Denison v. Denison*, 4 Wash. 705, 30 Pac. 1100; *Cozard v. Cozard*, 48 Wash. 124, 92 Pac. 935; *Rogers v. Rogers*, 81 Wash. 502, 142 Pac. 1150; *Murray v. Murray*, 38 Wn. (2d) 269, 229 P. (2d) 309.

■ The court awarded respondent custody of the two minor children with visitation privileges to appellant. The visitation was restricted to the home of the children. The appellant is not complaining about the custody of the children being awarded to their mother, but he urges that the restriction was not justified by the evidence. There was some testimony given with reference to conduct of appellant towards one of the children, which no doubt prompted the court to feel that for a time it would be advisable to place a restriction on the place of visitation. It was not sufficient upon which to base the implication sought by respondent, but called for the exercise by the court of a sound discre-

tion. It does not appear from the record that respondent bears towards appellant any hostile attitude so that reasonable visitations will be met with interference. When conditions change, the court can make such a modification of the decree as may be deemed proper.

The most difficult problem confronting the trial court (and now this court upon review) was the ascertainment of the value of the property owned by appellant and respondent and the making of equitable disposition thereof. At the time of the marriage, appellant owned substantial assets. Although he had not acquired much school education, he was a successful business man in his field of general contractor. By the co-operative efforts of both parties they prospered and increased their estate. The court treated all of their assets as community property.

In making an equitable distribution of the property, the court had to consider, among many other factors, the condition in which the respondent and appellant would be left upon the granting of a divorce. The respondent was of the age of thirty-four years. Before marriage she had attended school up to the point of approximately the end of the second year in a university. After marriage she had assumed the role of housewife. The custody of the children having been awarded to her, she has the duty to operate a home, care for them, and send them to school. This will require her full time, if she is to give the children that which is their due, for quite a number of years. During such time, she will not, in all probability, have any substantial earning capacity. The appellant was of the age of fifty-one years. He had built up a good business. That which he produced was in demand. He was capable of earning a substantial income. He was industrious and frugal in his habits. He had good credit at the banks with which he had dealt.

The court found that the property of appellant and respondent consisted of their home, located at 2627 West Boston street, Seattle, and described as lot 2, block 188, Gilman Addition to the city of Seattle, King County, Wash-

ington, and the usual household goods, furniture and fixtures; a dwelling house located at 3236 42nd avenue, West Seattle, and legally described as follows: lots 15 and 16, block 4, Hiawatha Park Addition to Seattle, King County, Washington. The house on the property had been built by appellant, but had not been completed. The other property consisted of such assets as corporate stock, balance owing on a real-estate contract, a residence located on 42nd avenue, Seattle, near to lots 15 and 16, three vacant lots, an automobile, insurance policies, and some accounts receivable. At one time the parties had acquired some war savings bonds, and there was some testimony about an item of four thousand dollars in cash which had been kept in the home. Neither party was able to account for the bonds or the money.

There appears in the record some discussion over an item of money approximating forty-three thousand dollars, which was on deposit in banks and which appellant withdrew about the time the first divorce action was commenced. The trial judge was not satisfied with the accounting of that item made by appellant. While appellant was testifying, he was criticized for his seeming lack of memory in important particulars relating to financial affairs, and in one of the findings of fact it is stated that appellant was withholding a considerable amount of liquid assets belonging to the community.

The appellant gave testimony to the effect that, in the prosecution of his business in the building and selling of dwelling houses, he made deposits of the proceeds of sales in savings accounts and necessarily made withdrawals for the purpose of paying indebtednesses incurred. The savings accounts were not entered in his books except withdrawals therefrom when deposited in his checking account. He asserts that the court failed to give consideration to a large amount of indebtedness incurred in the prosecution of the business and which had not been paid at the time of trial.

The court awarded the home, lot 2, block 188, Gilman Addition, to respondent, and the dwelling house property,

described as lots 15 and 16, block 4, Hiawatha Park, in trust for the two minor children. The decree provided that the trust property should be held for the use and benefit of the children during their minority, or until emancipation, at which time any equity or value in the property remaining was to be turned over to the children or to the survivor of them. The balance of the community property was awarded to appellant. The court further awarded alimony to respondent to be paid by appellant in the sum of one hundred dollars per month for a period of twelve months from the date of the decree, and gave her a judgment directing appellant to pay to her twenty-five dollars per month for each of the children for their support until the further order of the court. The court awarded respondent the sum of five hundred dollars to apply upon her attorneys' fees and directed appellant to pay the same to her; also the costs and disbursements to be taxed, together with all other legal expenses of the trial. The decree directed that appellant pay all community bills and obligations and his own separate liabilities.

The record discloses much difference between the parties as to the values to be placed upon the properties. It would serve no useful purpose to review the conflicting testimony, evaluate it, and determine where the preponderance lies. In making a distribution, the trial court is necessarily vested with a wide latitude of discretion, having in mind the factors referred to in Rem. Supp. 1949, § 997-11, and all of the other circumstances of the case as disclosed by the evidence. Our opinions in the many cases we have decided in which property divisions were involved are of but little assistance, and hence we shall not cite or review them. Each case must depend upon its own circumstances, and both the trial and appellate courts must reach conclusions which they deem just and equitable.

We are in accord with that part of the decree which awards the home and household goods to respondent and approve of the award of property made to appellant. We do not believe that the disposition of the other property in

trust is advisable. It should be sold upon such terms and conditions as the court may prescribe. The proceeds of the sale, if for cash, or the contract or mortgage, if such represents any part of the purchase price, should be deposited with some bank or trust company with arrangements for the payment to respondent for the support and maintenance of herself and the children of three hundred dollars per month until the fund is exhausted, subject to the power of the court to modify if the necessities of respondent or the minor children may so require; also in the event of the remarriage of respondent, so that the fund may exclusively be used for the benefit of the children. Upon the exhaustion of the fund, the court shall have authority to make suitable alimony provisions for the respondent, if she be unmarried, and for the support, maintenance and education of the children. The appellant should be required to complete the construction of the house as originally contemplated at his own expense.

We are prompted to direct the foregoing modification of the decree because of the practical difficulties inherent in the handling and renting of trust property by respondent and the inadequacy of the award of alimony and support money.

We find merit in a part of the cross-appeal. The amount of attorneys' fees awarded to respondent for her attorneys was inadequate. Considering the length of time taken in the trial, the factual and legal questions involved, and the amount and character of the property to be considered, it is our opinion that the amount awarded should be increased by an additional five hundred dollars, and that respondent should be allowed the further sum of five hundred dollars with which to compensate her attorneys for their services on this appeal. The errors in description of property should be corrected by the modified decree.

Respondent urges that the court erred in its findings of fact with reference to the value of the community assets, but in view of the modification of the decree we have directed to be made, the question of values is not now mate-

rial. We find in the record much justification for the finding made that appellant has withheld a considerable amount of assets belonging to the community and has not accounted for the same, but a search of the record has not enabled us to determine the extent thereof. It was the duty of appellant to make a full and fair disclosure of all property, both separate and community, as he had its management and control. The court was not satisfied that he had done so. In such a situation, appellant must not be surprised if the courts take that fact into consideration in making an equitable distribution of property. We have given consideration to the claim of appellant that funds were necessarily used by him in the payment of his business expenses and providing working capital; also the fact that by the decree the appellant is required to assume and pay all outstanding indebtedness and save the former community harmless therefrom.

The cause is remanded to the lower court for a modification of the decree in accordance with this opinion. In all other respects the decree will be affirmed. Respondent will recover her costs and disbursements on this appeal.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.